#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

EVERT ENGLAND, JR.,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    *Defendant.*

Case No. 14-1322-EFM

#### MEMORANDUM AND ORDER

    Plaintiff, Evert England Jr., seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits under Title II of the Social Security Act.  England alleges that the administrative law judge ("ALJ") erred by failing to support her determination of England's residual functional capacity ("RFC") with substantial evidence.  England also asserts that the ALJ erred by discounting England's statements without properly analyzing England's credibility.  Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I.    Factual and Procedural Background

    Evert England Jr. was born on February 2, 1968.  On January 12, 2012, England protectively applied for disability insurance benefits, alleging a disability beginning September

30, 2011. England particularly alleged that he was unable to work because of degenerative disc disease of the lumbar spine, status post-surgical lumbar fusion of the L4-5 and L5-SI vertebrae, and chronic pain in his legs and back. The application was denied initially and upon reconsideration. England then asked for a hearing before an ALJ.

ALJ Rhonda Greenberg conducted an administrative hearing by video on June 14, 2013. England was represented counsel and testified about his medical condition. A vocational expert also testified about potential employment prospects for someone of England's capabilities.

On August 19, 2013, the ALJ issued her written decision, finding that England had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that England suffered from degenerative disc disease of the lumbar spine and status post-surgical lumbar fusion of the L4-5 and L5-S1 vertebrae. The ALJ found that these impairments neither met, nor medically equaled, the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that England had the RFC to perform a range of light work, and could lift up to 35 pounds regularly and 40 pounds occasionally. She found that England could stand or walk for six hours and could sit for six hours out of an eight-hour workday. She also found that England could occasionally stoop and climb, and could frequently crawl and face exposure to vibration.

The ALJ then determined that England was capable of performing his past relevant work as a pellet mill operator. The ALJ found in the alternative that a significant number of other jobs that England could perform existed in the national economy. Thus, the ALJ concluded that England had not been under a disability from September 30, 2011, through the date of the decision.

England requested reconsideration of the ALJ's decision, and the Appeals Council denied the request on August 18, 2014. Accordingly, the ALJ's August 2013 decision became the final decision of the Commissioner.

England filed a complaint in the United States District Court for the District of Kansas. He seeks reversal of the ALJ's decision and either the grant of disability insurance benefits or remand to the Commissioner for a new administrative hearing. Because England has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

---

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III.   Analysis

England raises two issues. First, England asserts that the ALJ erred by failing to support her RFC assessment with substantial evidence. Next, England alleges that the ALJ erred in discounting his statements without properly considering relevant credibility factors.

**A.  Substantial Evidence Supports the ALJ's RFC Analysis**

England alleges that the ALJ failed to support her RFC finding with a proper narrative discussion, as required by Social Security Ruling 96-8p. Specifically, England argues that the ALJ failed to link specific medical evidence to her RFC findings. And England contends that in making the RFC determination, the ALJ gave too much weight to the opinions of two non-treating physicians while improperly discounting the opinion of England's treating physician. The Court disagrees.

---

[11] *Id.* at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

### 1. The ALJ Linked her RFC Finding to Substantial Evidence in the Record

The RFC assessment must be based on all relevant evidence in the case record.[14] It must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[15] If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adopted.[16] But there is no requirement that the RFC findings directly correspond to a specific medical opinion in the record.[17] And the RFC assessment need not discuss every single piece of evidence.[18] Although the record must demonstrate that the ALJ considered all of the evidence, she is only required to discuss the evidence supporting her decision, uncontroverted evidence she chooses not to rely on, and significantly probative evidence she rejects.[19]

England contends that the ALJ merely summarized the evidence without accounting for inconsistencies with her RFC assessment. In doing so, England argues, the ALJ failed to link the evidence to the RFC assessment as required by Social Security Ruling 96-8p. England argues a link is missing between the evidence and the RFC because the RFC is inconsistent with conflicting medical opinions and "internally inconsistent." The Court finds that the RFC is consistent with the record and adequately linked to the evidence.

---

[14] Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

[15] *Id.* at *7.

[16] *Id.*

[17] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[18] *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

[19] *Id.*

The "internal inconsistency" England points out is that the ALJ determined he could work at the "light" exertional level—which involves lifting no more than 20 pounds at a time[20]—but also that England could lift and carry up to 40 pounds occasionally. This argument is misplaced. In determining a claimant's RFC, the ALJ is not tasked with perfectly fitting a claimant within one of the exertional classifications. Rather, the ALJ must determine the most that the claimant can still do despite his limitations.[21] It is entirely consistent for the RFC to limit England to light work while simultaneously finding he could lift up to 40 pounds. The medium exertional level, which is one category above light work, involves lifting up to 50 pounds.[22] An individual who can lift up to 40 pounds would also be able to lift 20 pounds or less and thus be capable of light work. But that individual would not be able to lift 50 pounds, and therefore could not perform a full range of medium work. In the context of exertional levels, a full range of light work accurately reflects the most England can do. That England's RFC is slightly greater than the light exertional level is not an inconsistency and does not suggest that the evidence is not linked to the RFC.

England also asserts that the ALJ's RFC finding is improper because it is "inconsistent with the conflicting medical opinions." The ALJ gave substantial weight to Dr. Hendricks' opinion and significant weight to Dr. Kaur's opinion in making the RFC determination. Neither is England's treating physician. England argues that the RFC is not supported by substantial evidence because it does not completely adopt Dr. Hendricks' position, and at times, contradicts it. Once more, the alleged contradiction is that Dr. Hendricks opined England could lift up to 40

---

[20] 20 C.F.R. § 404.1567(b).

[21] 20 C.F.R. § 404.1545(a)(1).

[22] 20 C.F.R. § 404.1567(c).

pounds, but the ALJ's RFC assessment limits England to light work. As discussed above, these two findings are consistent with each other. In any event, there is no requirement that the RFC be exactly consistent with any one medical opinion.[23] Rather, the ALJ may restrict claimant's RFC in any way if the restriction is supported by evidence in the record.[24] Here, the ALJ adopted Dr. Hendricks' opinion that England could lift up to 40 pounds, as well as Dr. Kaur's opinion that England be limited to light work. These opinions do not conflict so much as to undermine that ALJ's RFC determination.

The ALJ also relied on diagnostic imaging, physical examinations, England's daily activities, and his testimony in making the RFC determination. As a whole, the record supported the ALJ's RFC finding.

## 2. The ALJ Sufficiently Evaluated the Medical Opinions

England assigns error to the ALJ giving significant weight to Dr. Kaur's opinion while discounting the opinion of Dr. Hardin, his treating physician.

England argues that the opinion of Dr. Kaur, a one-time consultative physician should not be given significant weight. On the other hand, England argues that his treating physician, Dr. Hardin, should have been given controlling weight by the ALJ. "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[25] If the treating physician's opinion is not entitled to controlling weight, the ALJ still

---

[23] *Chapo*, 682 F.3d at 1288. ("There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion. . . .").

[24] *See Chrisco v. Astrue*, 2013 WL 872400, *6 (D. Kan. Mar. 8, 2013).

[25] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted).

must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. § 404.1527.[26] These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[27] The ALJ must give specific, legitimate reasons if she completely rejects the treating physician's opinion.[28] The ALJ is not required to discuss each factor, but the reasons stated must be "sufficiently specific" to allow meaningful review.[29]

Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[30] But opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating sources under appropriate circumstances.[31] A treating source opinion about the nature and severity of impairment will be given controlling weight only if the opinion is: 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) consistent with other substantial evidence in the claimant's case record.[32] A treating source opinion is not entitled to controlling weight if it is deficient in either support or consistency with other evidence.[33] If a treating source is not given controlling weight, it may still entitled to deference.[34]

---

[26] *Id*. at 1176-77.

[27] 20 C.F.R. § 404.1527(c)(2)-(6).

[28] *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

[29] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1300.

[30] 20 C.F.R. § 404.1527(c).

[31] *Hayes v. Colvin*, 2014 WL 6609380, at *5 (D. Kan. Nov. 20, 2014).

[32] 20 C.F.R. § 404.1527(c).

[33] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[34] Soc. Sec. Ruling 96.2P, 1996 WL 374188, *1 (Soc. Sec. Admin. July 2, 1996).

Here, the ALJ considered Dr. Hardin's opinion but was unable to give it controlling weight. Instead, the ALJ gave Dr. Hardin's opinion "little weight." The ALJ found that medical evidence did not adequately support Dr. Hardin's opinion. Specifically, the ALJ concluded that Dr. Hardin's opinion that England could not stand, walk, or sit for a total of seven hours a day was undermined by "unremarkable" physical examinations that showed no muscle loss or atrophy. And the ALJ found that Dr. Hardin's opinion was inconsistent with England's own testimony. Dr. Hardin opined England could not lift more than 10 pounds. But England testified that he could lift up to 25 pounds and perform lift household chores. England also stated that his pain was well controlled and he could comfortably complete daily tasks. The ALJ thoroughly discussed the medical evidence and cited to specific inconsistencies in discounting Dr. Hardin's opinion. Accordingly, the Court finds no error in the ALJ giving Dr. Hardin's opinion little weight.[35] In discounting Dr. Hardin's opinion, the ALJ cited sufficiently specific inconsistencies between the opinion and relied on other substantial medical and non-medical evidence.

## B. ALJ Properly Evaluated England's Credibility

England contends that the ALJ's determination of his credibility is unsupported by a proper analysis or substantial evidence because the ALJ only addressed his credibility in one full paragraph of conclusory statements.

The ALJ, as the finder of fact, is ideally suited to address credibility, and the Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence.[36] But credibility findings must be linked to substantial evidence and not just a conclusion dressed as a

---

[35] *See Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) (affirming a finding that a treating physician was entitled little weight when the ALJ thoroughly discussed the evidence and demonstrated little support for the opinion in the record).

[36] *Wilson*, 602 F.3d at 1144.

finding.[37] Generally, an ALJ's credibility determinations are treated as binding on review, recognizing that symptoms are sometimes exaggerated when applying for government benefits.[38] An evaluation of subjective allegations of pain necessarily turns on credibility.[39] If an ALJ determines that a claimant's testimony was not credible, she has a duty to explain how she arrived at her conclusion.[40]

In this case, the ALJ determined that England's subjective complaints were somewhat exaggerated and inconsistent with other evidence. England asserts that this conclusion, reached in a single paragraph towards the end of the decision, shows that the ALJ failed to provide any substantial evidence for her assessment. But this argument ignores the fact that the ALJ addressed England's credibility earlier in the decision before reaching her ultimate conclusion. The ALJ found that after carefully considering the evidence, England's statements were not entirely credible. The ALJ noted that England's statements concerning the intensity, persistence, and limiting effects of the symptoms were contradicted by other evidence. The ALJ specifically cited the post-surgery reports, unremarkable diagnostic imaging and physical examinations, and the success of pharmacological treatment and physical therapy. And England's testimony regarding his symptoms contradicted his earlier report that his pain was well controlled and he can accomplish daily tasks comfortably. The record supports the ALJ's determination of

---

[37] *Id.*

[38] *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[39] *White v. Barnhardt*, 287 F.3d 903, 909 (10th Cir. 2001).

[40] *See Larkins ex rel M.D. v. Colvin*, 568 F. App'x 646, 650 (10th Cir. 2014).

England's credibility, and she cited her justifications for making such a determination. The Court will not disturb her determination.[41]

In conclusion, the Court finds that substantial evidence supports the ALJ's decision. The Court finds no reason to remand the case. Thus, the Court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 23rd day of September, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[41] *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) ("We cannot substitute our judgment for the ALJ's.").